**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT STRINGER, | ) | |
| | ) | Civil Action No. 3:25-cv-294 |
| Plaintiff, | ) | |
| | ) | District Judge Stephanie L. Haines |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| C/O WINGARD, *et al.*, | ) | Re: ECF No. 10 |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

For the following reasons, it is respectfully recommended that the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim ("Motion to Dismiss"), ECF No. 10, filed by Defendants C/O Nathan Wingard ("Wingard"), C/O Robert Setliff ("Setliff"), and Lieutenant Fink ("Fink") (collectively, the "Corrections Defendants") be granted as set forth herein.[1]

## II. REPORT

### A. FACTUAL BACKGROUND

Plaintiff Robert Stringer ("Plaintiff") brings this *pro se* civil rights action for injuries allegedly sustained by him during his incarceration at the State Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset"). The factual allegations set forth in this Report and Recommendation are taken from the Complaint. ECF No. 1-2.

---

[1] When defense counsel filed the Motion to Dismiss, it was on behalf of all Defendants. However, in preparing this ruling, the Court determined that defense counsel had not entered his appearance on behalf of Defendant Jane Doe, Nurse ("Nurse Doe"). Court staff contacted defense counsel, and he then filed Erratas at ECF Nos. 22 and 23, correcting the filings to reflect that he did not represent Nurse Doe. As such, there is no longer full consent to the jurisdiction of a United States Magistrate Judge.

Plaintiff, at all relevant times, was in the custody of the Pennsylvania Department of Corrections ("DOC") and incarcerated at SCI-Somerset. Id. ¶ 4. Wingard and Setliff were corrections officers in the Restricted Housing Unit ("RHU") at SCI-Somerset at all relevant times. Id. ¶¶ 3-4.[2] Fink was a Lieutenant at SCI-Somerset who supervised Wingard and Setliff in regard to their responsibilities to Plaintiff. Id. ¶ 5. Nurse Doe worked as a nurse in the medical department at SCI-Somerset.[3] Id. ¶ 6.

On February 3, 2024, Plaintiff was placed in psych observation after being placed under investigation for allegedly breaking institutional rules. Id. ¶ 9. Plaintiff's clothes were removed, he was forced to put on an orange paper outfit, and he was shackled and handcuffed. Id. ¶¶ 9-11. Plaintiff's hands were placed in a "kufbag," which involved a bag attached to a belt into which his hands were placed and secured with a zip tie. Id. ¶¶ 12-14. Plaintiff was permitted to remove his hands from the kufbag every two hours to exercise his hands, use the restroom, and/or eat. Id. ¶ 16.

On February 5, 2024, at approximately 2:00 p.m., Fink, Wingard, and Setliff came to allow Plaintiff to exercise his hands. Id. ¶ 17. When Plaintiff had finished, Fink watched as Wingard and Setliff put Plaintiff's hands back in the restraints and the kufbag. Id. ¶ 18. As they were finishing, Plaintiff informed them that "it was too tight." Id. ¶ 19. However, Nurse Doe checked Plaintiff, as she did after every time he exercised his hands, and said "it'd be okay." Id.

The next time Plaintiff's hands were removed from the kufbag by Fink, Wingard, and Setliff to allow Plaintiff to eat dinner, he informed them that his hands were numb. Id. ¶ 20. At

---

[2] Plaintiff has two paragraphs numbered 3 and 4 in the Complaint. Id. at 3. This citation is to the second set of these paragraphs.

[3] As noted, Nurse Doe is not a party to the pending Motion to Dismiss, but the Court's analysis necessarily also addresses Plaintiff's claims against her.

that time, they saw the scar left from the zip tie. Id. ¶ 21. Plaintiff was not provided medical care, but Nurse Doe said Plaintiff was "fine," that "it'll go away," and that "it's normal." Id. ¶ 22.

Plaintiff continued to complain about his thumbs being numb after each exercise session, but his restraints were not eased, nor did he receive any medical attention. Id. ¶ 23. On February 7, 2024, at approximately 3:00 p.m., Lieutenant Foster "came to take [Plaintiff] off the investigation without giving him a misconduct." Id. ¶ 24. As he was being released from the kufbag, Plaintiff informed the male nurse present at the time that his thumbs were numb. Id. ¶ 25. The male nurse took pictures of Plaintiff's hands, wrists, and ankles. Id. ¶ 26.

Plaintiff was placed in the RHU at SCI-Somerset, and that night he put in a sick call request complaining about losing feeling in his thumbs. Id. ¶¶ 27-28. He also told a psych unit employee about his numb thumbs the next morning, February 8, 2024. Id. ¶ 29.

On February 9, 2024, a doctor came to Plaintiff's cell and told him that he was suffering from temporary nerve damage as a result of his restraints having been too tight. Id. ¶¶ 30-31. Plaintiff made additional sick calls on March 8 and May 31, 2024, requesting a follow-up because his thumbs were still numb, but was not seen by medical staff. Id. ¶¶ 32-33. He did not regain feeling in his thumbs until the second week of June 2024. Id. ¶ 33.

On February 10, 2024, Plaintiff filed Grievance No. 1074011 regarding the incident. Id. ¶ 34 and at 18-19. Although Plaintiff received several Initial Level Extensions authorizing an extension of time for the DOC to respond to this grievance, as of the filing of his Complaint, Plaintiff received no substantive response to the Grievance. Id. ¶ 35 and at 20-30.

## B. PROCEDURAL HISTORY

Plaintiff initiated this case by filing a Complaint in the Court of Common Pleas for Somerset County, Pennsylvania, on or around August 19, 2025. Id. at 1. In the Complaint,

Plaintiff raises allegations for excessive use of force in violation of the Eighth Amendment to the United States Constitution against Wingard and Setliff in their individual and official capacities (Count I). Id. ¶ 42. He also brings a claim for failure to protect and/or act in violation of the Eighth Amendment against Fink and Nurse Doe in their individual and official capacities (Count II). Id. ¶¶ 43-46. He seeks a trial by jury, punitive damages in the amount of $50,000.00 against each Defendant, costs, declaratory relief, and any other relief deemed necessary, just, proper, and equitable. Id. ¶¶ 47-52.

On September 11, 2025, the Corrections Defendants removed the case to this Court. ECF No. 1. On January 21, 2026, the Corrections Defendants filed the pending Motion to Dismiss and Brief in Support. ECF Nos. 10, 11. On June 23, 2026, Plaintiff filed his Response in Opposition. ECF No. 18.

The Motion to Dismiss is ripe for consideration.

**C. STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing a plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court

'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Id. (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'"). "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

**D. DISCUSSION**

Plaintiff brings his claims against Defendants for violating his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. To state a claim under Section 1983, a plaintiff must allege facts sufficient to establish "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Section 1983, by its own terms, creates no substantive rights, but rather provides a means for plaintiffs to seek relief for the deprivation of rights established by the Constitution or federal laws. See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

The Corrections Defendants seek dismissal of Plaintiff's claims on several grounds. The Court will address each in turn below.

**1. Official Capacity Claims – Counts I and II**

As noted, Plaintiff has sued all Defendants in both their individual and official capacities. The Corrections Defendants argue that any claims under Section 1983 raised against any of them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment to the United States Constitution. ECF No. 11 at 4-6. Plaintiff agrees that the Corrections Defendants cannot be held liable in their official capacities pursuant to the Eleventh Amendment and asks the Court to "drop" the claims against the Corrections Defendants in their official capacities. ECF No. 18.

The Court agrees with the parties. Absent consent by a state, the Eleventh Amendment bars a civil rights suit in federal court against a state, or a department or agency of the state having no existence apart from the state. See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing Alabama v. Pugh, 438 U.S. 781 (1978)). The Eleventh Amendment also bars money damages sought against a state official acting in his or her official capacity absent the consent of the state or a valid abrogation by Congress. See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Rather, suits against state employees in their official capacities for the recovery of damages are treated as suits against the state and are barred by the Eleventh Amendment. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102 (1984); Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 319 (3d Cir. 2013) (citation modified) ("When an action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants.").

Eleventh Amendment immunity, though, is not absolute. Such immunity is "subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002). None of these exceptions apply here. As to the first two, "[t]he Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases … and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983." O'Hara v. Indiana Univ. of Pa., 171 F. Supp. 2d 490, 495 (W.D. Pa. 2001). See also 42 Pa. C.S. § 8521(b); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Moreover, Plaintiff is not seeking any prospective injunctive or declaratory relief.

Because Plaintiff's claims against the Corrections Defendants in their official capacities are barred by the Eleventh Amendment and fall outside any recognized exception to immunity, it is recommended that all Section 1983 official capacity claims be dismissed with prejudice. As noted, Plaintiff agrees that these claims should be dismissed.

### 2. Eighth Amendment Excessive Force Claims – Count I

At Count I, Plaintiff alleges that Wingard and Setliff used excessive force in restraining him in violation of the Eighth Amendment. The Corrections Defendants argue that Plaintiff's allegations fail to establish a sufficient claim under the Eighth Amendment. ECF No. 11 at 6. They contend that Plaintiff's allegations are vague and that he alleges nothing more than a *de minimis* use of force insufficient to establish a constitutional violation. Id. at 6-9. Plaintiff counters that he has clearly pled that he suffered injuries as a result of Wingard and Setliff too tightly securing his handcuffs. He further asserts that it is not necessary for a plaintiff to allege a serious injury to bring an excessive force claim, citing Hudson v. McMillian, 503 U.S. 1 (1992). ECF No. 18 at 2-3.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citations omitted). The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." Hudson, 503 U.S. at 5 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). To establish an Eighth Amendment claim, a plaintiff must show: (1) that the deprivation was objectively sufficiently serious; and (2) that the defendant acted with "a sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The central question, therefore, faced by courts in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson, 503 U.S. at 7).

Courts consider several factors when determining whether a corrections officer has used excessive force in violation of the Eighth Amendment, commonly known as the "Whitley Factors," including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to

the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 321). The reasonableness of the use of force is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Giving the benefit of every favorable inference to Plaintiff, the Court will assume for purposes of its analysis that Plaintiff has adequately pled that the injuries to his hands were objectively sufficiently serious.[4] The problem here is that Plaintiff has not pled sufficient facts for the Court to adequately consider the Whitley factors in determining whether the Corrections Defendants acted with a sufficiently culpable state of mind. Indeed, outside of claiming that he told Wingard and Setliff that his restraints were too tight, Plaintiff sets forth no allegations in the Complaint that would suggest that Wingard and Setliff maliciously and/or sadistically intended to cause him harm. The United States Supreme Court has emphasized that the mental state that must be shown to prevail on an excessive force claim is a higher standard than mere deliberate indifference. See Porter v. Nussle, 534 U.S. 516, 528-29 (2002) (citing Farmer, 511 U.S. at 835-36). The allegations in the Complaint, which all but disregard the Corrections Defendants' state of mind, simply do not meet this high standard.

There is no question that even "[a] penologically sound restraint, such as handcuffs, can be used in a manner that results in an Eighth Amendment violation." Williams v. Clark, No. 1:17-

[4] Although a showing of a significant or serious injury is not necessary to make an Eighth Amendment claim, *de minimis* injuries, such as those arguably alleged here, do not provide support for a finding of an unreasonable use of force. See Brooks, 204 F.3d at 108 (holding that while the limited extent of the injury is not dispositive, it remains "highly relevant" to the determination of whether the force used was reasonable).

cv-00204, 2020 WL 85545, at *6 (W.D. Pa. Jan. 7, 2020). However, a plaintiff must go beyond merely claiming that the use of restraints may have caused an injury and allege that the defendants acted with the required *mens rea*. For example, in Love v. New Jersey Dep't of Corr., No. 15-4404, 2016 WL 2757738 (D.N.J. May 12, 2016), a prisoner raised an Eighth Amendment claim based on overly-tight handcuffs where he had complained of the situation to corrections officers and they had declined to loosen them. In finding that the prisoner's claim "falls short of pleading a proper Eighth Amendment claim for excessive force," the district court noted that he had pled no facts to suggest improper motivation such as malicious or sadistic purposes. Id. at *5. See also Adams v. Metellus, Civ. No. 23-2142, 2025 WL 3176085, at *7 n.36 (E.D. Pa. Nov. 13, 2025) (emphasizing that the plaintiff "does not plead any other facts to suggest that the tightness of the handcuffing, other than his personal discomfort, was malicious, sadistic").

The situation is materially similar here. Plaintiff complains that his restraints were too tight and that he informed the Corrections Defendants of this fact, but he does not plead any facts that would permit an inference of any malicious or sadistic intent to cause harm. Moreover, while the duration of Plaintiff's time in restraints was greater than in cases such as Love and Adams, here, by Plaintiff's own admission, medical personnel checked his hands while they were out of the kufbag at regular intervals. ECF No. 1-2 ¶¶ 6, 19, 22, 25-26. As further discussed below, Nurse Doe did examine Plaintiff's wrists upon his voiced complaints of numbness and found no immediate medical concerns.

Therefore, Plaintiff has failed to adequately plead an excessive force claim at Count I as it is currently constituted. The Court thus recommends that the Motion to Dismiss be granted as to Count I and that this count be dismissed with leave to amend.

### 3. Deliberate Indifference Claims – Count II

Plaintiff's claim at Count II, which he titles "Failure to Protect(Act)," actually appears to raise two different types of deliberate indifference claims under the Eighth Amendment.[5] He alleges that Fink and Nurse Doe failed to intervene in Wingard and Setliff's unconstitutional use of excessive force, ECF No. 1-2 ¶ 46, and also that they refused and/or delayed him receiving necessary medical treatment, Id. ¶¶ 43-45. The Court will address each of these theories in turn.

#### a. Failure to Intervene

Law enforcement officers have a duty to take reasonable steps to protect a victim from another officer's use of excessive force. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). To establish a failure to intervene claim, an inmate must demonstrate that "(1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'" Knight v. Walton, No. 2:12-cv-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting Smith, 293 F.3d at 651).

Therefore, a constitutional violation is a necessary predicate to a failure to intervene claim. See Hughes v. Herbster, No. 23-3122, 2024 WL 4707882, at *5 (3d Cir. Nov. 7, 2024) (explaining that a plaintiff's "failure to intervene claim hinges on whether her excessive force claim succeeds"). As such, without such constitutional violation or harm, there can be no failure to intervene or protect. See Hunter v. Sutter, No. 1:23-cv-287, 2024 WL 5319122, at *4 (W.D. Pa. Nov. 27, 2024), report and recommendation adopted, No. 1:23-cv-287, 2025 WL 72806 (W.D. Pa. Jan. 10, 2025) ("Because the record will not support a finding that [Defendant] Patterson used

---

5 Plaintiff does not expressly cite to the Eighth Amendment at Count II, but deliberate indifference claims for prisoners already convicted are properly brought under this amendment. See Ginyard v. Del-Prete, No. 22-3213, 2023 WL 3967906, at *1 n.1 (3d Cir. June 13, 2023).

excessive force against [Plaintiff] Hunter, [Defendant] Volz was under no duty to protect Hunter or to intervene in Patterson's conduct. Accordingly, Volz is entitled to judgment as a matter of law."). See also Batchelor v. Spagnoletti, No. 24-cv-1258, 2025 WL 590335, at *12 (E.D. Pa. Feb. 21, 2025).

As discussed above, the Court has found that Plaintiff has failed to plead an adequate excessive force claim against Wingard and Setliff. Without a viable excessive force claim, there can be no failure to intervene claim.

Moreover, "[m]ost cases that have considered the application of the Eighth Amendment to a prison guard's failure to intervene to protect an inmate from injury inflicted by other prison guards have concluded that such conduct must be judged under Farmer's deliberate indifference standard." Moon v. Dragovich, Civ. No. 96-5525, 1997 WL 180333, at *4 n.3 (E.D. Pa. Apr. 14, 1997). Nothing contained in the Complaint would support an inference that Fink or Nurse Doe acted with deliberate indifference. As discussed above, Nurse Doe actually did examine Plaintiff when he complained of hand numbness due to the restraints being too tight.

Accordingly, it is recommended that Plaintiff's failure to intervene claim be dismissed with leave to amend.

**b. Medical Deliberate Indifference**

A deliberate indifference claim in the medical context requires: (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Thomas v. City of Harrisburg, 88 F.4th 275, 281 (3d Cir. 2023) (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) and Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). Although Plaintiff does not allege that the doctor who diagnosed him as suffering from temporary nerve damage prescribed any treatment, ECF No. 1-2 ¶ 31, accepting all non-conclusory allegations in the Complaint as true, and giving Plaintiff the benefit of every favorable inference, the Court will assume for purposes of its Rule 12(b)(6) analysis that Plaintiff did sufficiently allege a serious medical need.

The Court therefore must go on to determine whether the allegations are sufficient to establish deliberate indifference. "Deliberate indifference is a subjective standard consistent with recklessness." Thomas, 88 F.4th at 281. It requires a showing that the official "knows of and disregards an excessive risk to inmate health or safety." Natale, 318 F.3d at 582 (quoting Farmer, 511 U.S. at 837). In the medical context, "[d]eliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, . . . or 'persistent conduct in the face of resultant pain and risk of permanent injury.'" Josey v. Beard, No. 1:06-cv-265, 2009 WL 1858250, at *6 (W.D. Pa. June 29, 2009) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) and White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)).

"Mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation." Id. (citing Estelle, 429 U.S. at 106). "The deliberate indifference 'test affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.'"

Beckett v. Pa. Dep't of Corr., 597 F. App'x 665, 668 (3d Cir. 2015) (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Williams v. Ferdarko, 807 F. App'x 177, 180 (3d Cir. 2020) (quoting United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Thus, "deliberate indifference is generally not found when some level of medical care has been offered to the inmate." Josey, 2009 WL 1858250, at *6 (citing Clark v. Doe, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)).

Here, Plaintiff acknowledges in the Complaint that Nurse Doe examined his hands on a regular basis while he was subjected to the kufbag and specifically that she did so when he complained of hand numbness. ECF No. 1-2 ¶¶ 6, 19, 22. It is not enough for him to claim that she was wrong in determining that no treatment was needed; he must plead facts that would establish that she acted with deliberate indifference to a serious medical need. Likewise, "mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.'" Gause v. Diguglielmo, 339 F. App'x 132, 135 (3d Cir. 2009) (internal citations omitted).[6] Plaintiff fails to set forth any facts in the Complaint that would go beyond a claim of negligence or disagreement and establish that Nurse Doe acted with deliberate indifference.[7]

---

6 The Court also notes that Plaintiff was in fact seen by a doctor on February 9, 2024, but Plaintiff does not allege that the doctor prescribed any treatment. ECF No. 1-2 ¶¶ 30-31.

7 Plaintiff does not set forth any facts that would establish that Fink took any actions that would have prevented the administration of medical care beyond being present when Nurse Doe indicated that none was necessary.

Therefore, it is recommended that the Motion to Dismiss be granted as to Count II. Count II should be dismissed but with leave to amend.

### 4. Leave to Amend

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Id.

As to Plaintiff's claims against the Corrections Defendants in their official capacities, as discussed herein, permitting amendment would be futile, and Plaintiff's official capacity claims should be dismissed with prejudice. However, while Plaintiff's remaining claims are insufficient as stated, the Court cannot say that Plaintiff would not be able to plead facts adequate to support such claims. Indeed, it is the lack of supporting factual allegations that renders these counts unviable as currently stated; more precise pleading may provide adequate support for these claims. Further, Plaintiff has not previously had an opportunity to amend the Complaint. Accordingly, it is recommended that Plaintiff be permitted to amend Counts I and II against the Corrections Defendants in their individual capacities.

## E. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 10, be granted. However, it is recommended that Plaintiff's claims against the Corrections Defendants in their individual capacities be dismissed without prejudice and with leave to amend within 30 days of the Court's order regarding this Report and Recommendation.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

*/s/ **Maureen P. Kelly***
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: September 4, 2026

cc: The Honorable Stephanie L. Haines
United States District Judge

All counsel of record by Notice of Electronic Filing

Robert Stringer
GJ1592
SCI Somerset
1590 Walters Mill Road
Somerset, PA 15510